IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| MARK J. MCFARLAND, | ) | |
| Plaintiff, | ) | CV 07-6016-MO |
| v. | ) | OPINION AND ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**MOSMAN, J.,**

Plaintiff Mark McFarland brings this action for judicial review of a final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act. This court has jurisdiction under 42 U.S.C. § 405(g). For the reasons set forth below, I find the ALJ's decision was based on correct legal standards and supported by substantial evidence. The Commissioner's decision is therefore affirmed and the case is dismissed.

## BACKGROUND

Mr. McFarland was thirty-four years old at the time of the hearing. (Admin. R. 93, 880.) He has a high school education, and completed a real estate program at a community college. (Admin. R. 880-81.) He has worked as a glazier, security guard, fireplace installer, yard man,

1 - OPINION AND ORDER

and military mechanic. (Admin. R. 99, 915.) He alleges onset of disability from April 10, 2000, due to post-fusion and post-laminectomy syndrome with radiculitis. He filed for disability on July 1, 2003, and his application was denied initially and on reconsideration. A hearing was held before an Administrative Law Judge ("ALJ") on December 6, 2005. The ALJ determined Mr. McFarland satisfied the insured status requirements for a claim under Title II through December 31, 2005. To prevail on his DIB claim, Mr. McFarland must establish that he was disabled on or before that date. 42 U.S.C. § 423(a)(1)(A); *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998).

The ALJ issued an opinion on December 16, 2005, finding Mr. McFarland disabled for a closed period from April 10, 2000, to June 10, 2003, and indicated Mr. McFarland had stipulated to being disabled only during this closed period. Because Mr. McFarland did not actually so stipulate, the ALJ issued an amended decision on March 14, 2006, finding Mr. McFarland disabled for that closed period but not thereafter. The ALJ determined Mr. McFarland experienced medical improvement related to his ability to perform work, and that this improvement was sufficient to allow him to perform substantial gainful activity after the closed period. The ALJ's decision is the final decision of the Commissioner.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a sequential process of up to five steps for determining whether a person over the age of 18 is disabled within the meaning of the Act. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(I). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). If the claimant does not have such a severe impairment, he is not disabled. *Id.* At step three, the ALJ determines whether a severe impairment meets or equals a "listed" impairment found in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's severe impairment meets or equals a listed impairment and meets the duration requirement, he is disabled. 20 C.F.R. § 404.1520(d).

If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e), 404.1545; Social Security Ruling (SSR) 96-8p. At step four, the Commissioner must determine whether the claimant retains the RFC to perform work he has done in the past. If the ALJ determines that he retains the ability to perform his past work, the Commissioner will find the claimant not disabled. 20 C.F.R. § 404.1520(f).

At step five, the Commissioner must determine whether the claimant can perform work that exists in the national economy. *Bowen v. Yuckert*, 482 U.S. at 142; 20 C.F.R. § 404.1520(e), (g). Here the burden shifts to the Commissioner to show that a significant number

of jobs exist in the national economy that the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the Commissioner meets this burden, then the claimant is not disabled. *Id.,* 20 C.F.R. § 404.1566.

## THE ALJ's FINDINGS

The ALJ found at step one of the disability analysis that Mr. McFarland did not engage in substantial gainful activity ("SGA") during the closed period. (Admin. R. 31.) At step two, he found the medical evidence established Mr. McFarland has severe impairments of post-fusion and post-laminectomy syndrome consisting of illioinguinal neuralgia, abdominal wall muscle enthesopathy, and bilateral lower extremity mononeuritis and/or radiculitis. (Admin. R. 26.) The ALJ noted Mr. McFarland received treatment for depression he developed as a reaction to pain. *Id.* The ALJ noted further that Mr. McFarland's depression was controlled with medications, and that the state agency consulting psychologists found he had no severe mental impairment. *Id.* The ALJ found Mr. McFarland had no significant functional limitations from depression.

At step three, the ALJ found Mr. McFarland's combination of impairments did not meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, subpt. P, app. 1. The ALJ found that after June 10, 2003, Mr. McFarland retained the RFC to perform sedentary level work of sitting for six hours and standing or walking for two hours out of an eight hour day. (Admin. R. 27.) He found Mr. McFarland could not do reaching activities or climb ladders, ropes or scaffolds, and that he could perform certain other activities on only an occasional basis, including climbing stairs and ramps, stooping, crouching, and crawling. *Id.*

The ALJ elicited testimony from an impartial vocational expert ("VE"). (Admin. R. 915-920.) The VE testified Mr. McFarland could not perform his past relevant work. (Admin. R. 918.) When the ALJ asked the VE whether an individual of Mr. McFarland's age, education, experience, and RFC could perform work that exists in significant numbers in the national economy, the VE responded that such an individual could perform work as a surveillance system monitor, microfilm document preparer, and cashier. (Admin. R. 918-919.) The ALJ determined Mr. McFarland could not perform substantial gainful activity during the closed period, and was disabled from April 10, 2000, to June 10, 2003. (Admin. R. 31.) He also found Mr. McFarland experienced medical improvement in his impairments that affected his ability to work, and determined that after June 10, 2003, Mr. McFarland was able to perform work that exists in significant numbers in the national economy, and was therefore not disabled within the meaning of the Social Security Act. *Id.*

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Commissioner of Social Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morgan v. Commissioner of Social Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for resolving conflicts in the medical evidence and determining credibility. *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may

not substitute its judgment for that of the Commissioner. *Thomas v. Barnhart,* 278 F.3d 947, 954 (9th Cir. 2002). The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld even if the "evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d 1035, 1039-1040 (9th Cir. 1995).

## DISCUSSION

Mr. McFarland alleges the ALJ erred by (1) determining he experienced medical improvement after the closed period of disability; (2) failing to properly credit the opinion of Dr. Dunn, a treating physician; (3) failing to give sufficient reasons for rejecting Mr. McFarland's testimony; and (4) finding at step five that he could do other work in the national economy.

**I.      Medical Background**

The parties agree Mr. McFarland was disabled from April 10, 2000, to June 10, 2003. The discussion of the extensive medical record, which the court has reviewed, will be brief. Mr. McFarland injured his back in a work-related accident on April 10, 2000. The injury resulted in spinal fusion surgery in November 2000, and a complicated and prolonged recovery. (Admin. R. 141-160.) Mr. McFarland was hospitalized for a deep wound staphylococcal infection a month after his fusion surgery. (Admin. R. 162-194.) A few months later, he suffered a fall that resulted in an arm fracture. During treatment for the left arm fracture, the surgeon determined Mr. McFarland had right hand atrophy and ulnar neuropathy as a result of the injury or surgery. (Admin. R. 203-207.) He was also treated for depression. Mr. McFarland's medications included opiates for pain relief and antidepressants. (Admin. R. 195-196, 200.)

Mr. McFarland moved from California to Oregon in 2002 and was referred to Dr. Dunn at

Pain Consultants of Oregon. (Admin. R. 201.) Dr. Dunn began treating Mr. McFarland in February 2002. He prescribed narcotic pain medications, physical therapy, sessions with a pain therapy psychologist, and intermittent injection therapy. (Admin. R. 355-371.) Dr. Dunn informed Mr. McFarland that he needed to find a primary care physician within six months in order to continue the narcotic medications. (Admin. R. 370.) Dr. Dunn noted in May 2002 that Mr. McFarland's ulnar neuropathy was improving, and that further improvement could be expected. (Admin. R. 352.) In October 2002, Dr. Dunn prescribed a continuation of physical therapy, as well as prescriptions for Norco, Prozac, Zanaflex, Methadone and Lidoderm. (Admin. R. 343.)

In January 2003, Dr. Dunn noted that Mr. McFarland was in school, his pain was well controlled with medications, and he had completed a pain management course at Progressive Rehabilitation Associates. (Admin. R. 337.) Mr. McFarland's medications included Methadone, Prozac, Lidoderm, and Trazodone. (Admin. R. 339.) On April 19, 2003, Dr. Dunn completed a "Return to Work" report and noted Mr. McFarland was limited to occasionally lifting, carrying, pushing or pulling less than ten pounds. Dr. Dunn also noted Mr. McFarland could only rarely kneel, squat, crawl or reach overhead. He noted further that Mr. McFarland could bend only 0-15 degrees, and even then only occasionally. Dr. Dunn further limited Mr. McFarland to one hour of continuous sitting at a time, and one hour of continuous standing/walking at a time. (Admin. R. 332.)

Dr. Kurtz, an orthopedic surgeon, completed a workers' compensation examination of Mr. McFarland on June10, 2003. (Admin. R. 235-248.) He found Mr. McFarland's right ulnar palsy secondary to surgery and left arm fracture were resolved. (Admin. R. 237.) Dr. Kurtz found that

7 - OPINION AND ORDER

without further treatment, Mr. McFarland had reached a permanent and stationary level, and that Mr. McFarland could not return to his past relevant work, and was limited to semi-sedentary work. (Admin. R. 246.) Dr. Kurtz also noted use of a TENS unit and back brace at work were medical necessities. *Id.*

Dr. Izzo, a neurosurgeon, completed a workers' compensation examination of Mr. McFarland on July 28, 2003. (Admin. R. 513-529.) He agreed with Dr. Kurtz, and noted Mr. McFarland had a permanent, partial disability that limited him to semi-sedentary work. (Admin. R. 527.) Dr. Izzo determined Mr. McFarland was medically stationary as of December 2002. (Admin. R. 526.) He suggested rehabilitation that included weaning Mr. McFarland from Methadone and using non-narcotic medications and other therapies. (Admin. R. 529.)

Dr. Dunn noted on September 25, 2003, that Mr. McFarland wanted other therapies and to "wean off his narcotics." (Admin. R. 328.) He referred Mr. McFarland for a pain psychology screening in order to perform a spinal cord stimulator trial, and continued pain medication management through the year. (Admin. R. 325, 331.) On January 7, 2004, Dr. Dunn noted Mr. McFarland complained of persistent back pain with frequent radiation into his legs, and requested the spinal cord stimulator trial. He also noted Mr. McFarland was unable to complete his accounting courses, and pain prevented him for sitting more than one hour, walking more than a mile, or standing more than ten minutes. (Admin. R. 321-323.) Dr. Dunn further noted tests indicated satisfactory postoperative appearance in the lumbar region of the spine, a minimal focal central disk like bulge in the cervical spine, and reinnervation in the forearm. He noted no excessive pain behavior, full range of motion, and intact reflexes. *Id.*

Dr. Dunn wrote a letter to Mr. McFarland's attorney on February 3, 2004, stating Mr. McFarland could not sustain full-time work at that time. (Admin. R. 399- 400.) Dr. Dunn noted on March 10, 2004, that the spinal cord stimulator ("SCS") trial could proceed; the trial was completed in May 2004, after Mr. McFarland's vacation to Mexico. (Admin. R. 498-502, 507-510.) Dr. Dunn implanted the SCS in July 2004. (Admin. R. 401-404.) Dr. Dunn continued to treat Mr. McFarland until September 2006. (Admin. R. 713-715, 723.) During this period, the SCS was explanted and a new SCS device was implanted and later removed. (Admin. R. 406-408, 411-413, 716-721.) Mr. McFarland had narcotics compliance issues during this time period, and took extra medication as he completed his course work and started working in California. (Admin. R. 424, 434-435, 456-458, 567-576, 578-580, 734, 741-749,752, 774, 782, 789, 814-815, 821, 828-834, 842-843.)

Mr. McFarland was hospitalized in June 2005 for mycrocytic anemia with iron deficiency. (Admin. R. 602-619.) Tests indicated he had helicobacter pylori, which was successfully treated. (Admin. R. 602-619, 711.) Mr. McFarland was put on a gluten-free diet for celiac disease in October 2005. (Admin. R. 627.) He was diagnosed with a small hiatal hernia and ulcerative esophagitis in January 2006, and treated with medications. (Admin. R. 685-686.) Dr. Brendler treated Mr. McFarland in May 2006, and noted, "probable motility disorder just based on clinical situation. He also has been on multiple pain meds [sic] that could contribute to decreased motility." (Admin. R. 703.) She treated him with medications. *Id.*

**II**.    **Medical Improvement**

Mr. McFarland argues the ALJ erred in finding he experienced medical improvement related to his ability to work after June 10, 2003. (*See* Admin. R. 31, 32.) In order to terminate

disability benefits, there must be substantial evidence of medical improvement. 42 U.S.C. § 423(f)(1), *Murray v. Heckler,* 722 F. 2d. 499, 500. (9th Cir. 1983). A finding of disability creates a "presumption of continuing disability." *Bellamy v. Secretary of Health & Human Serv.,* 755 F.2d 1380, 1381 (9th Cir. 1985). Mr. McFarland argues the medical improvement standard applicable in termination of benefits cases applies in cases of closed periods of disability because disability benefits are both awarded and terminated. (Pl. Br. 16.) Mr. McFarland cites cases in other circuits holding the medical improvement standard applies to closed periods of disability.[1] In *Mendoza v. Apfel,* 88 F. Supp.2d 1108 (C.D. Cal., 2000), the court agreed with these decisions from other circuits noting, "[F]airness would certainly seem to require an adequate showing of medical improvement whenever an ALJ determines that disability should be limited to a specified period." *Id.* at 1113, citing *Chrupcala v. Heckler,* 829 F.2d 1269, 1274 (3rd Cir. 1987). This court does not need to reach the issue of whether the medical improvement standard applies to all closed period cases, however, because the ALJ's finding in this case is based on substantial evidence.

Medical improvement is "any decrease in the medical severity of impairments" that were present at the onset of disability. 20 C.F.R. § 404.1594(b)(1). The determination of a decrease in medical severity is based on "changes in the symptoms, signs and/or laboratory findings" associated with the impairment. *Id.* The ALJ determined the extensive complications post-fusion surgery prevented Mr. McFarland from working during the closed disability period. (Admin. R. 27.) He disagreed with the state agency physicians who opined Mr. McFarland's

---

[1] *Shepherd v. Apfel,* 184 F.3d 1196, 1198 (10th Cir. 1999); see also *Jones v. Shalala,* 10 F.3d 522, 524 (7th Cir. 1993); see also *Chrupcala v. Heckler,* 829 F.2d 1269, 1274 (3rd Cir. 1987).

10 - OPINION AND ORDER

successful fusion surgery indicated he could return to work within twelve months of the date of disability onset. (Admin. R. 28.) The ALJ noted, however, that Mr. McFarland's post-surgical complications of infection, arm fracture, and ulnar neuropathy were successfully resolved, or medically improved, by the end of the closed disability period. (Admin. R. 26, 201-202, 210, 237, 333-336.)

Medical improvement related to the ability to work also requires an increase in the capacity to do work. 20 C.F.R. § 404.1594(b)(3). This determination of improvement involves an analysis of the functional capacity to do work activities, or the claimant's RFC. 20 C.F.R. § 404.1594(b)(4). The RFC of the claimant following medical improvement must be sufficient for the claimant to engage in substantial gainful employment. 20 C.F.R. § 404.1594(b)(5).

**III.    RFC Determination**

The ALJ noted that his RFC assessment was based in part on the agreement between the opinions of two examining specialist physicians, Drs. Kurtz and Izzo, and Mr. McFarland's treating physician, Dr. Dunn. Drs. Kurtz and Izzo agreed that Mr. McFarland could not perform his past work, but could perform "semi-sedentary work." (Admin. R. 246, 527.) Dr. Kurtz opined Mr. McFarland was medically stationary as of June 10, 2003. (Admin. R. 245.) Dr. Izzo opined Mr. McFarland was medically stationary as of December 2002. (Admin. R. 526.) The ALJ noted the adversarial nature of workers' compensation claims, and adopted Dr. Kurtz's opinion that Mr. McFarland became medically stationary at the later date of June 10, 2003. (Admin. R. 29.) He further noted this was supported by Dr. Dunn's opinion of April 19, 2003. *Id.* Dr. Dunn determined on April 19, 2003, that Mr. McFarland had work limitations including

a sedentary level of exertion[2] with only occasional bending and rarely reaching overhead, kneeling, squatting, or crawling. (Admin. R. 332.) Dr. Dunn also noted Mr. McFarland was limited to sitting, standing, and walking for one hour continuously. *Id.* The ALJ noted these limitations were essentially the same as those in Mr. McFarland's RFC. He noted further that the RFC limited sitting, standing and walking to two hours out of an eight hour day, and, with normal work breaks, this was not inconsistent with Dr. Dunn's opinion of April 19, 2003. (Admin. R. 27.)

### A. Dr. Dunn's Opinion

Dr. Dunn wrote a letter to Mr. McFarland's attorney on February 12, 2004 stating, "I do not believe he will be able to sustain full time work at this time as defined by your letter." (Admin. R. 400.) Mr. McFarland asserts the ALJ erred in rejecting the opinion in Dr. Dunn's letter. Social security regulations specify that the most weight is given to the opinions of treating physicians, followed by examining physicians, and that the least amount of weight is given to nonexamining experts. *Holohan v. Massanari*, 246 F.3d 1195, 1201-1202 (9th Cir. 2001). An ALJ can reject a treating physician's opinion that is controverted if he makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)(citations omitted). However, the ALJ is not required to accept any physician's opinion that is "brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d at 957.

---

[2] Dr. Dunn limited Mr. McFarland to occasionally lifting, carrying, pushing, or pulling less than ten pounds. A sedentary level of exertion involves "lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R.§ 404.1567(a).

The ALJ specifically noted Dr. Dunn's opinion in the February 2004 letter was inconsistent with his clinical findings and medical notes. (Admin. R. 28-29.) He further found Dr. Dunn's clinical findings were consistently unremarkable and near normal. (Admin. R. 29, 321-324, 329-331.) The ALJ further noted that between Dr. Dunn's opinion in April 2003, articulating specific work limitations, and his letter of February 2004, stating Mr. McFarland was unable to do even sedentary work, Mr. McFarland was examined by orthopedic and neurologic physician evaluators. Those physicians, Drs. Kurtz and Izzo, found Mr. McFarland could return to semi-sedentary work. (Admin. R. 29.) The ALJ also noted Dr. Dunn's treatment of Mr. McFarland at this time was conservative, and although he prescribed spinal cord stimulation, he did not order new imaging studies to check the continued adequacy of the spinal fusion. *Id.*

The ALJ may also reject a physician's disability opinion that is premised on the claimant's subjective symptom reports which the ALJ has properly discredited. *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ noted that Dr. Dunn did not consider Mr. McFarland's excessive narcotics use and whether he exaggerated his symptoms in order to obtain them. (Admin. R. 29.) As the ALJ noted and the medical record supports, Mr. McFarland had narcotic medication compliance issues requiring prescription monitoring and office pill counts. (Admin. R. 29, 210, 741-746, 782-784, 828-831, 834, 842-843.) The ALJ also noted Dr. Dunn eventually cautioned Mr. McFarland that some of his symptoms were due to a "sudden lack of narcotics as he had used more than the amount prescribed." (Admin. R. 29, 446.) The ALJ gave specific and legitimate reasons, based on substantial evidence in the record, for rejecting Dr. Dunn's controverted opinion of February 2004.

13 - OPINION AND ORDER

**C. Credibility Determination**

Mr. McFarland asserts the ALJ failed to give clear and convincing reasons for rejecting his testimony. The ALJ must assess the credibility of the claimant regarding the severity of symptoms when the claimant produces objective medical evidence of an impairment that "could reasonably be expected" to produce the alleged symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)(citations omitted). Mr. McFarland has a medically determinable impairment which could produce pain symptoms. When there is an underlying impairment and no evidence of malingering, an ALJ may discredit a claimant's testimony regarding the severity of symptoms only by providing clear and convincing reasons based on specific findings. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In assessing credibility, the ALJ may consider objective medical evidence, the claimant's treatment history, and ordinary techniques of credibility evaluation. *Smolen v. Chater*, 80 F.3d at 1284. As noted above, the ALJ found the medical record did not support McFarland's allegations of disability and "strongly suggests that he may be exaggerating pain to obtain excessive narcotics." (Admin. R. 29.) Although Mr. McFarland objects to this characterization of his use of pain medications, it was a reasonable inference for the ALJ to draw based on the record, which indicates a history of overuse of pain medications and concern by health care providers regarding addictive behavior. (Admin. R. 210, 215, 580, 745-747, 812-815, 821, 828-831, 838.)

In addition to objective medical evidence and the claimant's treatment history, the ALJ may also consider compliance with treatment recommendations. *Smolen v. Chater*, 80 F.3d at 1284; SSR 96-7p. The ALJ noted Mr. McFarland delayed his SCS implant and prescribed

14 - OPINION AND ORDER

physical therapy sessions due to a trip to Mexico. (Admin. R. 30, 556.) And as noted above, the medical record indicates Mr. McFarland had compliance problems related to his pain medications.

The ALJ may also consider the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge about the claimant's functional limitations. *Thomas v. Barnhart,* 278 F.3d at 958-959 (citations omitted). The ALJ cited the opinions of examining physicians regarding Mr. McFarland's ability to do semi-sedentary work. (Admin. R. 28.) He also noted Mr. McFarland maintained a fairly active lifestyle of working out with weights and cardiovascular equipment, riding snowmobiles, skiing, performing housework, preparing meals, traveling, attending school, and socializing. (Admin. R. 29-30.) Mr. McFarland argues that despite the notes in the record regarding these activities, he testified at the hearing that his skiing was limited to a few feet, snowmobiling was limited, and that he was able to complete real estate school because of the ability to leave class. (Admin. R. 885, 909.) Mr. McFarland also testified he quit work after five weeks due to celiac disease and back pain. (Admin. R. 882.) The ALJ questioned Mr. McFarland about the celiac disease, and Mr. McFarland testified he was treated with a gluten-free diet. (Admin. R. 888-889.)

Although Mr. McFarland may not have regularly undertaken activities such as skiing and snowmobiling, the ALJ noted he performed other activities of daily living. The ability to perform daily household chores may indicate an ability to work. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). However, a disability claimant does not need to be "utterly incapacitated to be eligible for benefits." *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989). Nevertheless, if the claimant's level and type of activity is inconsistent with his claimed limitations, his activities do

have a bearing on his credibility. *Id.* The record supports the ALJ's opinion that Mr. McFarland was able to complete household chores, cook, socialize, and travel. (Admin. R. 110-114, 463, 507-510.) The ALJ gave clear and convincing reasons for rejecting Mr. McFarland's assertion he is unable to do any work. And even if one of the ALJ's reasons was not clear and convincing, it does not necessarily undermine the credibility evaluation when there is substantial evidence supporting the ALJ's conclusions. *Batson v. Commissioner of Social Sec. Admin.,* 359 F.3d at 1197. It is the ALJ's duty is to assess credibility, and he did so based on substantial evidence in the record.

### IV. Step Five Determination

Mr. McFarland asserts the ALJ erred because the hypothetical question posed to the VE did not include all of his limitations. Vocational expert testimony based on a hypothetical question that does not reflect all of the claimant's limitations has no evidentiary value. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). However, the ALJ evaluated the evidence and reached an RFC assessment that reflected the limitations the evidence reasonably supported. He was not required to pose a hypothetical question that contained limitations he did not find were supported by substantial evidence in the record. *Osenbrock v. Apfel,* 240 F.3d 1157, 1164-1165 (9th Cir. 2001).

The ALJ elicited testimony from the VE with a hypothetical question that included all of Mr. McFarland's limitations articulated in the RFC assessment. The VE testified that there were jobs in the national economy that Mr. McFarland could perform based on his RFC, age, education, and experience. It was proper for the ALJ to rely on the VE's answer to a hypothetical that contained all of the limitations supported by substantial evidence. *Bayliss v. Barnhart,* 427

F. 3d 1211, 1217-1218 (9th Cir. 2005).  The ALJ found Mr. McFarland able, since June 10, 2003, to perform work that exists in the national economy.  The ALJ's decision is free of legal error and based on substantial evidence in the record.

## CONCLUSION

Based on the foregoing, the Commissioner's decision that Mr. McFarland was disabled under the Social Security Act for the closed period from August 10, 2000 to June 10, 2003, but not thereafter, is based on correct legal standards and supported by substantial evidence.

## ORDER

The Commissioner's final decision is AFFIRMED and the case is DISMISSED.

IT IS SO ORDERED.

DATED this  12th   day of March, 2008.

                                                /s/ Michael W. Mosman
                                                Michael W. Mosman
                                                United States District Judge